IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ORANGE COUNTY RESCUE SQUAD,      )
INC., GARY J. CLARK              )
                                 )
     Plaintiffs,                 )
                                 )
     v.                          )      1:09CV244
                                 )
COUNTY OF ORANGE, COLONEL F.     )
ROJAS MONTES DE OCA, JR.         )
                                 )
     Defendants.                 )


**<u>MEMORANDUM OPINION AND ORDER</u>**


OSTEEN, JR., District Judge


     Presently before the court are, inter alia, Defendants'
Motion to Dismiss for Failure to State a Claim upon Which Relief
May Be Granted (Doc. 19) and Defendants' Motion to Dismiss
Plaintiffs' Class Action Claim for Lack of Subject Matter
Jurisdiction (Doc. 21).  Defendants filed briefs in support of
said motions, Plaintiffs filed responses in opposition, and
Defendants filed reply briefs.  These motions are now ripe for
decision.  Having carefully considered the pleadings and the
parties' arguments, this court will grant Defendants' Rule
12(b)(6) motion with respect to all federal-law portions of the
first six causes of action in Plaintiffs' First Amended Complaint
(Doc. 4).  This court will also grant Defendants' Rule 12(b)(1)
motion to dismiss Plaintiffs' class action claim, which arises
entirely under federal law.  This court will ultimately dismiss,

with prejudice, all of Plaintiffs' claims over which this court has original jurisdiction.  Thus, in accordance with its discretion under 28 U.S.C. § 1367(c)(3), this court will decline to exercise supplemental jurisdiction over Plaintiffs' state-law claims and will dismiss those claims without prejudice.  See Yarborough v. Burger King Corp., 406 F. Supp. 2d 605, 609 (M.D.N.C. 2005); Gen. Textile Printing & Processing Corp. v. City of Rocky Mount, 908 F. Supp. 1295, 1312 (E.D.N.C. 1995).  This court will also consider, and deny, Plaintiffs' Motion for Class Certification on the Seventh Cause of Action (Doc. 14), Plaintiffs' Motion for Leave to File Amended Complaint (Doc. 30),[1] and Plaintiffs' Motion to Add Party Joining an Additional Plaintiff (Doc. 31).

## I.    BACKGROUND

The following facts are presented in the light most favorable to Plaintiffs.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  Plaintiff Orange County Rescue Squad, Inc. ("OCRS") is a North Carolina nonprofit corporation

---

[1] For reasons that will be discussed below, this court will deny Plaintiffs' Motion for Leave to File Amended Complaint (Doc. 30) as futile.  See infra notes 7, 12.  Thus, the First Amended Complaint (Doc. 4) is the operative complaint for purposes of this order.

However, this court recognizes that Plaintiffs' Motion for Leave to File Amended Complaint (Doc. 30) could implicate state-law claims that this court intends to dismiss without prejudice. This court will therefore deny that motion only insofar as it concerns the federal-law issues in this case.

with its principal place of business in Hillsborough, North Carolina. (1st Am. Compl. (Doc. 4) ¶ 6.) OCRS provides rescue and emergency transport services to the citizens of Orange County, North Carolina. (Id.) Plaintiff Gary Clark ("Mr. Clark") is an individual domiciled in Orange County. (Id. ¶ 8.) Mr. Clark is a fully qualified North Carolina licensed paramedic. (Id.) Defendant County of Orange ("Orange County") is a county existing under the laws of the State of North Carolina. (Id. ¶ 10.) Defendant Colonel F. Rojas Montes de Oca, Jr. ("Col. Montes de Oca") is the duly appointed and serving Orange County Emergency Services Director. (Id. ¶ 12.)

In January 2005, Orange County awarded a five-year franchise to OCRS to perform heavy rescue extrication and emergency medical transport. (See id. ¶ 14.) In addition to being temporary, the franchise agreement is "non-exclusive," (id. Ex. A (Doc. 4-2) 1), and may be revoked by Orange County "in the event of noncompliance with the provisions of the Orange County Franchise Ordinance or this Franchise," (id. at 17). The franchise agreement also states that

> [t]he Medical Director may suspend temporarily, pending
> due process review by the EMS Peer Review Committee,
> any of [OCRS]'s EMS personnel from further
> participation in the EMS system when the Medical
> Director determines that the activities or medical care
> rendered by such personnel may be detrimental to the
> care of the Patient, constitute unprofessional behavior
> or result in non-compliance with credentialing
> requirements.

3

(Id. at 14.)  On June 27, 2008, Col. Montes de Oca telephoned OCRS and issued a "stand-down" order, pursuant to which OCRS was prohibited from using Orange County's 911 dispatch system and from being dispatched to assist on any emergency calls in Orange County.  (1st Am. Compl. (Doc. 4) ¶¶ 15-16.)  Col. Montes de Oca later sent a memo to OCRS, stating that law enforcement would be summoned if OCRS's members were found administering aid to victims on any emergency scene.  (Id. ¶ 17.)  Despite OCRS's attempts to resolve the issues that led to the stand-down order, Defendants have not lifted that order.  (Id. ¶¶ 18-19.)

On April 6, 2009, OCRS filed a Complaint (Doc. 1) against Defendants in this court.  On June 14, 2009, OCRS filed a Motion to Add Party Joining an Additional Plaintiff (Doc. 5), seeking to join Mr. Clark as a plaintiff in the case.  That same day, OCRS also filed its First Amended Complaint (Doc. 4), which reflected the proposed addition of Mr. Clark.  By order entered July 20, 2009, this court granted OCRS's motion to join Mr. Clark and retroactively approved the First Amended Complaint.  Order Granting Mot. Add Party Joining Additional Pl., Orange Cnty. Rescue Squad, Inc. v. Cnty. of Orange, No. 1:09CV244 (M.D.N.C. July 20, 2009) (Doc. 18).

In the First Amended Complaint, Plaintiffs assert the following seven causes of action: (1) "Federal Due Process Violation," (2) "Federal and State 'Equal Protection' Violation,"

4

(3) "State Due Process Violation," (4) "State Common Law Breach

of Contract," (5) "Orange County Ordinance Violates Federal and

State Constitutions," (6) "State Common Law Breach of Implied

Contract," and (7) a class action claim for "Violation of Federal

Due Process to Provide Adequate Rescue and Emergency Transport

Services." (1st Am. Compl. (Doc. 4) ¶¶ 20-230.) On July 27,

2009, Defendants filed a motion to dismiss all of Plaintiffs'

claims pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc.

19) and a motion to dismiss Plaintiffs' class action claim

pursuant to Rule 12(b)(1) (Doc. 21). In addressing those

motions, this court will restrict its consideration of the First

Amended Complaint to the federal issues presented therein; those

specific claims are identified hereafter by the claim numbers

referred to in this paragraph.

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  Iqbal, 129 S. Ct. at

1949 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007)).[2]  In Iqbal, the Supreme Court explained that motions to

_____

[2] Plaintiffs contend that this court should apply the
"liberal pleading standard" that the Supreme Court articulated in
Conley v. Gibson, 355 U.S. 41, 45-46 (1957), and applied more
recently in Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514
(2002). (Resp. Opp'n Defs.' Mot. Dismiss Failure State Claim
(Doc. 28) 4 ("The instant complaint is more like the facts and
claims in Swierkiewicz than in Iqbal, thus a liberal pleading

dismiss should be considered using a "two-pronged approach." Id. at 1950. First, a court must accept the complaint's factual allegations as true. Id. at 1949. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Courts should therefore "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950.

Treating only well-pleaded factual allegations as true, the court should "then determine whether they plausibly give rise to an entitlement to relief." Id. In order for a claim to be facially plausible, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Id. at 1949

---

standard is appropriate.").) However, even more recently, the Supreme Court explicitly overruled the Conley standard. Francis v. Giacomelli, 588 F.3d 186, 192 n.1 (4th Cir. 2009) (citing Twombly, 550 U.S. at 562-63). Though Plaintiffs argue that liberal pleading rules apply in cases seeking constitutional remedies, the Supreme Court noted in Iqbal that its "decision in Twombly expounded the pleading standard for 'all civil actions.'" 129 S. Ct. at 1953 (quoting Fed. R. Civ. P. 1). Accordingly, this court will apply the standard elucidated in Twombly and Iqbal.

(citing <u>Twombly</u>, 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  <u>Id.</u> at 1950 (citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  <u>Id.</u> (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

**III. ANALYSIS**

**(1)  "Federal Due Process Violation"**

OCRS first asserts a claim under 42 U.S.C. § 1983[3] for violation of the Fourteenth Amendment's Due Process Clause.  (1st Am. Compl. (Doc. 4) ¶¶ 20-31.)  Specifically, OCRS alleges that,

---

[3] Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983 (2006).

via the stand-down order, Defendants have deprived OCRS of property interests that "can only be taken from someone situated like [OCRS] upon written notice of the charges and the opportunity to request a full hearing on those charges." (Id. ¶ 23.) OCRS alleges further that Defendants have not afforded OCRS any hearing on the matter. (Id. ¶¶ 25-26.)

"In order to state a valid procedural due process claim, [OCRS] must demonstrate: (1) that it had a property interest; (2) of which [Defendants] deprived it; (3) without due process of law." Tri-County Paving, Inc. v. Ashe Cnty., 281 F.3d 430, 436 (4th Cir. 2002) (citation omitted). OCRS asserts that it has a property interest in its franchise agreement with Orange County, in the use of Orange County's dispatch system, and in actually being dispatched to assist in emergency situations. (1st Am. Compl. (Doc. 4) ¶ 22.) This bare assertion is the sort of "legal conclusion[]" that is "not entitled to the assumption of truth" when challenged by a motion to dismiss. See Iqbal, 129 S. Ct. at 1949-50. "Property interests . . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972). OCRS has not directed this court to any rules or understandings that define

8

its asserted property interests, let alone demonstrated or explained how such rules or understandings might support OCRS's claims of entitlement. See Beauchamp v. Davis, 550 F.2d 959, 961-62 (4th Cir. 1977) (holding that dismissal was proper when the plaintiff failed to demonstrate that state law entitled her to a pre-termination hearing).

Further, even if this court gives OCRS the benefit of the doubt and assumes that the asserted property interests are defined by the franchise agreement and the circumstances surrounding it, OCRS has still failed to show that this claim is actionable under § 1983. "'[A] mere breach of contractual right is not a deprivation of property without constitutional due process of law. . . . Otherwise, virtually every controversy involving an alleged breach of contract by a government . . . would be a constitutional case.'" Coastland Corp. v. Currituck Cnty., 734 F.2d 175, 178 (4th Cir. 1984) (second and third alterations in original) (quoting Jimenez v. Almodovar, 650 F.2d 363, 370 (1st Cir. 1981)). The First Amended Complaint makes no attempt to demonstrate that the stand-down order represents anything more than an alleged "mere breach of contractual right." See id. Notably, instead of asking under cause of action (1) that this court order Defendants to conduct proceedings regarding the propriety of the stand-down order, OCRS seeks "damages . . . in an amount of [sic] excess of $400,000." (1st Am. Compl. (Doc.

4) ¶ 30.)  This is strikingly similar to the $400,000 in

compensatory damages that OCRS seeks under cause of action (4),

which alleges breach of contract under state common law.  (Id. ¶

66.)  Because OCRS has failed to allege sufficiently that the

franchise agreement rises above the level of an "ordinary

commercial contract," this court concludes that cause of action

(1) does not state a facially plausible claim for relief from a

violation of the Fourteenth Amendment's Due Process Clause.  See

S & D Maint. Co. v. Goldin, 844 F.2d 962, 966 (2d Cir. 1988) ("An

interest in enforcement of an ordinary commercial contract with a

state is qualitatively different from the interests the Supreme

Court has thus far viewed as 'property' entitled to procedural

due process protection."); see also Pinehurst Enters., Inc. v.

Town of S. Pines, 690 F. Supp. 444, 451 (M.D.N.C. 1988) (holding

that the plaintiff failed to state a claim under § 1983 because

the complaint "merely alleges that defendants have breached

rights arising under contracts"), aff'd per curiam, 887 F.2d 1080

(4th Cir. 1989).

This court notes that OCRS, in its Response in Opposition to

Defendants' Motion to Dismiss for Failure to State a Claim (Doc.

28), urges the court to apply a test that was adopted by the

United States District Court for the District of Maryland in

Blackwell v. Mayor of Delmar, 841 F. Supp. 151, 155-56 (D. Md.

1993), for determining whether a contract right is also a due process property right. That test

> involves a two-step inquiry. First, the contract must create an entitlement, which can result from contract provisions permitting termination only for cause. <u>Hotel Syracuse, Inc. v. Young</u>, 805 F. Supp. 1073, 1084 (N.D.N.Y. 1992) (citing <u>S & D Maintenance</u>, 844 F.2d at 967). Second, the property right must be of a type accorded protection under the due process clause. <u>Id.</u> To satisfy this second element, the government's action in terminating the contract must result in revocation of the plaintiff's "status". <u>Id.</u>; <u>S & D Maintenance</u>, 844 F.2d at 967.

<u>Blackwell</u>, 841 F. Supp. at 155-56.

Even under OCRS's preferred test, this court concludes that OCRS has failed to demonstrate that it has a constitutional property right. Although the First Amended Complaint does not explicitly allege that the franchise agreement can only be broken for cause, this court observes that the agreement itself provides that the Medical Director may temporarily suspend OCRS personnel for cause and that Orange County "may revoke the Franchise in the event of noncompliance with the provisions of the Orange County Franchise Ordinance or this Franchise." (<u>See</u> 1st Am. Compl. Ex. A (Doc. 4-2) 14, 17.)[4] Nevertheless, the First Amended Complaint

---

[4] There are Supreme Court precedents that might be read to suggest that contractual provisions allowing termination only for cause are sufficient to elevate contract rights to the level of constitutional property interests. <u>See</u> <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 538-39 (1985) (holding that a state statute providing that civil service employees could only be dismissed for cause vested such employees with "property rights in continued employment"); <u>Roth</u>, 408 U.S. at 578 (holding that a college professor's notice of appointment, which "did not provide

is lacking with respect to the second step of the inquiry applied in <u>Blackwell</u>: OCRS does not even allege that it enjoys any "special or protected status" under the franchise agreement, much less attempt to demonstrate the nature and contours of such a status. <u>See</u> <u>Blackwell</u>, 841 F. Supp. at 156.

Moreover, this case does not appear to be sufficiently similar to previous cases in which federal courts have afforded constitutional procedural protection in connection with the revocation of a status. OCRS does not occupy "an estate within the public sphere characterized by a quality of either extreme dependence[, as] in the case of welfare benefits, or permanence[, as] in the case of tenure, or . . . both, as frequently occurs in the case of social security benefits." <u>See</u> <u>S & D Maint. Co.</u>, 844 F.2d at 966. To the contrary, OCRS's claims of constitutional property rights are undermined by the franchise's temporary

---

for contract renewal absent 'sufficient cause,'" did not vest the professor with "a property interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment"). However, this court finds an important distinction between those cases and the instant matter. <u>Loudermill</u> dealt with employees' claimed right to permanent employment during good behavior. 470 U.S. at 538-39. Although the appointment at issue in <u>Roth</u> was for a fixed term of one academic year, 408 U.S. at 566, that case likewise dealt with a claimed right to continued employment, framed in that instance as a right to contract renewal, <u>id.</u> at 578. Because OCRS does not claim any interest in continued employment beyond the five-year term of the franchise agreement, this court finds that <u>Loudermill</u> and <u>Roth</u> do not mandate a conclusion that the for-cause provisions in the franchise agreement vest OCRS with a constitutional property right, particularly when considered in light of the other conditions of the franchise agreement.

nature.  <u>Id.</u> at 966-67 ("[W]e hesitate to . . . constitutionalize

contractual interests that are not associated with any cognizable

status of the claimant beyond its temporary role as a

governmental contractor." (footnote omitted)).  This court also

finds that the franchise's nonexclusive character speaks against

a conclusion that OCRS has constitutional property interests

therein.  <u>Cf.</u> <u>Helena Waterworks Co. v. City of Helena</u>, 195 U.S.

383, 388 (1904) (stating that "in the absence of the grant of an

exclusive privilege, none will be implied"); <u>Durham v. North</u>

<u>Carolina</u>, 395 F.2d 58, 60-61 (4th Cir. 1968) (noting that "the

holder of a non-exclusive franchise has no monopoly, and cannot

complain of competition" (citations omitted)).  Further weakening

OCRS's claims to constitutional property rights is the fact that

the franchise does not guarantee that OCRS will be dispatched to

assist in emergency situations on any consistent basis: the

franchise simply states that "[OCRS]'s EMS Services shall be

dispatched from the Orange County Emergency Communications

Center." (1st Am. Compl. Ex. A (Doc. 4-2) 12.)[5] Ultimately,

_____

[5] This provision is located within Section 9 of the
franchise agreement, which is entitled "Communications
Requirement."  (<u>Id.</u> at 11-12.)  Thus, the requirement that OCRS
"shall be dispatched from the Orange County Emergency
Communications Center" might be a purely logistical provision
concerning the manner in which OCRS is to be dispatched, rather
than a guarantee that OCRS will ever actually be dispatched.  At
any rate, this court finds that the absence of a guarantee that
OCRS will be dispatched on any regular basis weighs against a
conclusion that OCRS has constitutional property rights in the
franchise agreement.

because the First Amended Complaint does not allege facts sufficient to "permit the court to infer more than the mere possibility of misconduct" with respect to OCRS's purported status, OCRS has failed to show that it is entitled to relief under the test applied in <u>Blackwell</u>. <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1950.

Further, even if OCRS had successfully alleged a constitutionally cognizable property interest, this court concludes that OCRS has failed to state a valid procedural due process claim because OCRS has not demonstrated a deprivation "without due process of law." <u>See</u> <u>Tri-County Paving, Inc.</u>, 281 F.3d at 436 (citation omitted). Although there apparently was no hearing before the stand-down order, OCRS may nevertheless pursue a lawsuit for breach of contract. The Supreme Court has "recognized that postdeprivation remedies made available by the State can satisfy the Due Process Clause," stating that

> either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process.

<u>Parratt v. Taylor</u>, 451 U.S. 527, 538-39 (1981) (footnote omitted), <u>overruled on other grounds by</u> <u>Daniels v. Williams</u>, 474 U.S. 327 (1986). In light of the facts that the franchise agreement relates to the provision of emergency services, is both

14

temporary and nonexclusive, and does not guarantee that OCRS will actually be dispatched with any regularity, this court concludes that an action for breach of contract constitutes a "meaningful means by which to assess the propriety of [Defendants'] action." See id.; see also S & D Maint. Co., 844 F.2d at 966 ("[E]ven if all public contract rights warranted the procedural protections of due process, there would be a substantial argument that in most circumstances post-deprivation state court remedies would provide all the process that is due.").[6] Because a breach of contract suit would meet the requirements of due process in this case, this court concludes that OCRS has failed to demonstrate a deprivation "without due process of law." See Tri-County Paving, Inc., 281 F.3d at 436 (citation omitted).

For all the foregoing reasons, this court will dismiss Plaintiffs' cause of action (1).

**(2) "Federal and State 'Equal Protection' Violation"**

OCRS next asserts claims under the equal protection clauses of the United States Constitution ("federal Constitution") and the North Carolina Constitution ("state constitution"). OCRS

---

[6] In addressing "the merits of the claim of contract breach," a lawsuit for breach of contract in this case would presumably entail significant "inquiry concerning . . . procedural regularity in connection with nonperformance," see S & D Maint. Co., 844 F.2d at 966, including such issues as whether Defendants afforded OCRS any process guaranteed by the franchise agreement, whether Col. Montes de Oca was the proper party to issue the stand-down order, and whether the for-cause provisions of the franchise agreement were satisfied.

alleges that it has been treated differently from South Orange Rescue Squad, Inc. ("South Orange"), "another rescue service that is located in Orange County." (1st Am. Compl. (Doc. 4) ¶¶ 32-43.) Specifically, OCRS states that Defendants deploy South Orange more frequently than Defendants use OCRS, despite the fact the two rescue services have "similar franchise agreement[s]" with Orange County. (Id. ¶¶ 33-37.) This court will only address the federal-law portion of this cause of action.

In order to state a valid "class of one" equal protection claim under § 1983 and the federal Constitution, OCRS must "allege[] that [it] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam) (citations omitted). OCRS has not even made a bare assertion that there is no rational basis for the alleged differential treatment, let alone pleaded factual content from which this court could draw a reasonable inference that Defendants lacked a rational basis for their actions. See Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).

Further, "[f]or a plaintiff to demonstrate that she is 'similarly situated,' her evidence 'must show an extremely high degree of similarity between [herself] and the persons to whom [she] compare[s]' herself." Willis v. Town of Marshall, 275 F.

16

App'x 227, 233 (4th Cir. 2008) (per curiam) (second, third, and fourth alterations in original) (quoting Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006)). OCRS alleges that it "has been treated differently from others similarly situated under the color of state law." (1st Am. Compl. (Doc. 4) ¶ 38.) This is a mere "[t]hreadbare recital[] of the elements of a cause of action" and is thus insufficient by itself to survive a Rule 12(b)(6) motion to dismiss. See Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 555). OCRS's only supporting allegation with respect to similarity states that South Orange is "another rescue service that is located in Orange County [and that] has a similar franchise agreement with [Orange County]." (1st Am. Compl. (Doc. 4) ¶ 35.)[7] This allegation only addresses three rather basic points of comparison between OCRS and South Orange and demonstrates at most "a sheer possibility" of "an extremely high degree of similarity" between the two entities.

---

[7] In Plaintiffs' proposed Second Amended Complaint, OCRS goes further, alleging that South Orange and OCRS have "almost identical franchise agreements." (Doc. 30-2 ¶ 41.) Despite its stronger language, this proposed allegation does not add significant probative value on the issue of OCRS's similarity with South Orange. The proposed Second Amended Complaint does not add any useful points of comparison between OCRS and South Orange, such as reliability, response time, or whether Orange County continues to utilize South Orange despite South Orange engaging in the same conduct that resulted in OCRS's stand-down order. Because this court concludes that the proposed Second Amended Complaint does not cure the defects of the First Amended Complaint, this court is not persuaded to grant Plaintiffs' Motion for Leave to File Amended Complaint (Doc. 30) with respect to Plaintiffs' federal equal protection claim.

The First Amended Complaint simply does not provide sufficient factual information to allow this court "to draw the reasonable inference that the defendant is liable" under Plaintiffs' federal equal protection claim.  See Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).  This court must therefore dismiss OCRS's federal equal protection claim.  Id.

Pursuant to 28 U.S.C. § 1367(c)(3), this court will decline to exercise jurisdiction over OCRS's equal protection claim under the state constitution.  Therefore, this court will not address the merits of that claim and will dismiss it without prejudice.

### (3)  "State Due Process Violation"

OCRS next claims that Defendants have violated "the Due Process Clause under Article I, §§ 1, 19, of the state constitution."  (1st Am. Compl. (Doc. 4) ¶ 51.)  Pursuant to 28 U.S.C. § 1367(c)(3), this court will decline to exercise jurisdiction over this state-law claim.  Therefore, this court will not address the merits of this claim and will dismiss it without prejudice.

### (4)  "State Common Law Breach of Contract"

OCRS's next claim is for breach of contract under North Carolina common law.  Pursuant to 28 U.S.C. § 1367(c)(3), this court will decline to exercise jurisdiction over this state-law claim.  Therefore, this court will not address the merits of this claim and will dismiss it without prejudice.

**(5)  "Orange County Ordinance Violates Federal and State Constitutions"**

OCRS next challenges the constitutionality of the Emergency Management Ordinance under which Col. Montes de Oca issued the stand-down order.  OCRS alleges that the ordinance "does not have any due process requirements or allow [OCRS] to challenge the 'Stand-Down' order of Colonel Montes de Oca administratively or request for full hearing [sic] before the Orange County Board of Commissioners," and argues that this court should therefore declare that the ordinance violates the federal and state constitutions.  (1st Am. Compl. (Doc. 4) ¶¶ 72-74.)  This court will only address the federal-law portion of this cause of action.

In light of the relevant allegations, this court presumes that OCRS's federal claim under cause of action (5) is a procedural due process challenge based on purported property rights.  As observed above, in order to state a valid procedural due process claim under § 1983 and the federal Constitution, OCRS "must demonstrate: (1) that it had a property interest; (2) of which [Defendants] deprived it; (3) without due process of law." Tri-County Paving, Inc., 281 F.3d at 436 (citation omitted).

Elsewhere in the First Amended Complaint, OCRS asserts that it has a property interest in its franchise agreement with Orange County, in the use of Orange County's dispatch system, and in actually being dispatched to assist in emergency situations.

(1st Am. Compl. (Doc. 4) ¶ 22.)  Again, this bare assertion is

the sort of "conclusory statement[]" that is "not entitled to the

assumption of truth" when challenged by a motion to dismiss.  See

Iqbal, 129 S. Ct. at 1949-50.  As noted previously, "[p]roperty

interests . . . . are created and their dimensions are defined by

existing rules or understandings that stem from an independent

source such as state law—rules or understandings that secure

certain benefits and that support claims of entitlement to those

benefits."  Roth, 408 U.S. at 577.  OCRS has again failed to

direct this court to any rules or understandings that define its

asserted property interests.  The First Amended Complaint

mentions three Orange County ordinances, but does not even allege

that they vest OCRS with any property interests, much less

explain how the ordinances support OCRS's claims of entitlement.

Only two of the three ordinances appear in the record before this

court, (see Resp. Opp'n Defs.' Mot. Dismiss Failure State Claim

Exs. A, B (Docs. 28-2, -3)), and this court's review of those two

ordinances has yielded little more than an apparent confirmation

that OCRS's franchise agreement can only be suspended or

terminated for cause, which this court finds to be an

insufficient basis for constitutional property rights under the

circumstances of this case.[8]  In failing to clarify the source

and the nature of its asserted property interests, OCRS has

---

[8] See supra note 4.

20

failed to demonstrate "more than a sheer possibility that [Defendants have] acted unlawfully." See Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).[9]

Moreover, even if OCRS had successfully alleged a constitutional property interest, this court concludes that OCRS has failed to demonstrate a deprivation "without due process of law." See Tri-County Paving, Inc., 281 F.3d at 436 (citation omitted). In light of the weight of the interests that OCRS asserts and the fact that those interests are directly related to the franchise agreement, this court concludes that a breach of contract lawsuit based on the franchise agreement would meet the requirements of due process in this case.[10]

This court concludes that OCRS has not "'state[d] a claim to relief that is plausible on its face'" with respect to its federal constitutional challenge to the Emergency Management Ordinance, and this court will therefore grant Defendants' motion to dismiss as to the federal portion of cause of action (5). See Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570).

_____

[9] To the extent that OCRS's federal constitutional challenge to the Emergency Management Ordinance is based on property rights allegedly arising from OCRS's franchise agreement with Orange County (as opposed to arising from the relevant Orange County ordinances), this court will dismiss that challenge for the same reasons it will dismiss cause of action (1), OCRS's claim of "Federal Due Process Violation."

[10] See supra pp. 14-15.

Pursuant to 28 U.S.C. § 1367(c)(3), this court will decline to exercise jurisdiction over the claim presented in cause of action (5) that arises under the state constitution.  Therefore, this court will not address the merits of that claim and will dismiss it without prejudice.

**(6)  "State Common Law Breach of Implied Contract"**

OCRS's next claim is for breach of implied contract under North Carolina common law.  Pursuant to 28 U.S.C. § 1367(c)(3), this court will decline to exercise jurisdiction over this state-law claim.  Therefore, this court will not address the merits of this claim and will dismiss it without prejudice.

**(7)  Class Action Claim for "Violation of Federal Due Process to Provide Adequate Rescue and Emergency Transport Services"**

Plaintiffs' final cause of action is a class action claim under § 1983, in which Plaintiffs assert that they have a due process life interest in adequate rescue and emergency transport services and that, via the stand-down order and related actions, Defendants have violated the federal Constitution's Fourteenth Amendment by depriving Plaintiffs of that life interest without due process of law.  Defendants have moved to dismiss the class action claim under Federal Rule of Civil Procedure 12(b)(1), arguing that this court lacks subject matter jurisdiction to entertain the claim, and under Rule 12(b)(6), contending that

Plaintiffs have failed to state a claim upon which relief can be granted.

In support of their Rule 12(b)(1) motion to dismiss, Defendants argue that Plaintiffs lack standing to bring their class action claim before this court. "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (citation omitted). "[T]he irreducible constitutional minimum of standing contains three elements": (1) injury in fact, (2) a causal connection between the plaintiff's injury and the challenged conduct, and (3) a likelihood that a decision in the plaintiff's favor would redress the injury. Id. at 560-61. "The party invoking federal jurisdiction bears the burden of establishing these elements." Id. at 561 (citations omitted).

In order to satisfy the injury-in-fact element of the standing test, Plaintiffs must demonstrate "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Id. at 560 (internal quotation marks and citations omitted). In describing their alleged injuries, Plaintiffs state that, due to Defendants' actions, Orange County "has had inadequate resources to provide proper rescue and emergency transport service to the citizen [sic] of Orange County

and others." (1st Am. Compl. (Doc. 4) ¶ 224.)  In support of

this assertion, Plaintiffs describe five medical emergencies that

occurred between May 2006 and March 2009, four of which took

place after the stand-down order was issued on June 27, 2008.

(Id. ¶¶ 151-209.)[11]  Plaintiffs appear to contend that if Orange

County had utilized a broader range of rescue and emergency

transport resources in response to these five incidents, the

outcomes of the incidents would have been more favorable. (See

id.)

Plaintiffs have not shown that their preferred class

representative (Mr. Clark) or any member of OCRS suffered any

"concrete and particularized" injury as a result of Orange

County's purported failure to provide adequate emergency

services.[12]  In order to demonstrate such an injury, a plaintiff

_____

[11] This court observes that Plaintiffs' proposed Second
Amended Complaint includes a sixth medical emergency, which took
place in Orange County on August 23, 2008. (Doc. 30-2 ¶¶ 200-
09.)  For reasons that will be articulated below, the addition of
this incident to the complaint would have no effect on this
court's decision with respect to Plaintiffs' class action claim.
See infra note 12.

[12] Plaintiffs seek to join Frances D. Brown ("Mrs. Brown") as
a plaintiff and class representative in their Second Amended
Complaint. (Doc. 30-2 ¶¶ 10-11, 116, 200-09.)  Plaintiffs have
also filed a Motion to Add Party Joining an Additional Plaintiff
(Doc. 31) with respect to Mrs. Brown.  The proposed Second
Amended Complaint alleges that on August 23, 2008, Mrs. Brown
fell to the ground at a restaurant in Orange County and required
emergency medical service due to a broken femur. (Doc. 30-2 ¶¶
200-04.)  Her family called 911, and a first responder did not
arrive for approximately thirty minutes. (Id. ¶¶ 204-05.)  An
ambulance did not arrive for about another fifteen minutes, and

"must somehow differentiate himself from the mass of people who

Mrs. Brown did not arrive at a hospital until approximately one hour after her fall.  (Id. ¶¶ 206-08.)  Plaintiffs allege that the restaurant "is located approximately one quarter mile away from OCRS station house where an ambulance and a crew could have been standing by but for Col. Montes de Oca's stand-down order." (Id. ¶ 209.)

Although Mrs. Brown appears to have a stronger argument for standing than Plaintiffs, this court would nonetheless conclude that Mrs. Brown lacks standing to invoke this court's jurisdiction.  The proposed Second Amended Complaint is not clear as to the nature of Mrs. Brown's asserted injury, so this court is left to infer what that injury is.  As there is no indication that the alleged delay in emergency medical service exacerbated Mrs. Brown's leg injury, this court assumes that Mrs. Brown seeks to complain of her wait times of approximately thirty minutes for a first responder, forty-five minutes for an ambulance, and one hour until she arrived at the hospital.  Plaintiffs do not assert (let alone provide support for) the notion that a delay in emergency medical service, standing alone, constitutes a deprivation of a cognizable due process life interest, so it is unclear whether Mrs. Brown has suffered injury in fact.

Moreover, even assuming arguendo that Mrs. Brown's wait time constitutes injury in fact, Plaintiffs have failed to establish the requisite causal connection between that injury and Defendants' challenged conduct.  See Lujan, 504 U.S. at 560.  The proposed Second Amended Complaint states that the restaurant where Mrs. Brown fell "is located approximately one quarter mile away from OCRS station house where an ambulance and a crew could have been standing by but for Col. Montes de Oca's stand-down order."  (Doc. 30-2 ¶ 209.)  However, Plaintiffs do not allege that an OCRS first responder would have arrived at the restaurant less than thirty minutes after the 911 call, that an OCRS ambulance would have arrived in less than forty-five minutes, or that OCRS would have delivered Mrs. Brown to a hospital in less than one hour.  In other words, there is no indication that, but for the stand-down order, Mrs. Brown would have spent less time waiting for emergency medical service.

Because Plaintiffs have not demonstrated a causal connection between the stand-down order and Mrs. Brown's purported injury, this court would conclude that Mrs. Brown lacks standing to bring Plaintiffs' class action claim.  This court therefore concludes that it would be futile to grant Plaintiffs' Motion for Leave to File Amended Complaint (Doc. 30) insofar as that motion concerns Plaintiffs' class action claim, and that it would likewise be futile to grant Plaintiffs' Motion to Add Party Joining an Additional Plaintiff (Doc. 31).

may find the conduct of which he complains to be objectionable only in an abstract sense. In other words, the alleged injury 'must affect the plaintiff in a personal and individual way.'" Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 156 (4th Cir. 2000) (en banc) (quoting Lujan, 504 U.S. at 560 n.1). While Mr. Clark and OCRS's members may be offended by lengthy emergency response times that could potentially exacerbate victims' injuries, there is no indication that Mr. Clark or any OCRS member has ever personally been a victim under such circumstances. Rather, Plaintiffs allege harm that derives from injuries suffered by third parties, thus asserting "a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, [which] normally does not warrant exercise of jurisdiction." Warth v. Seldin, 422 U.S. 490, 499 (1975) (citations omitted).

Further, Plaintiffs have failed to show that Mr. Clark or any OCRS member has suffered injury that is "actual or imminent, not conjectural or hypothetical." Plaintiffs contend that Mr. Clark "is a proper person to bring an action for a violation of due process duty [sic] to provide adequate rescue and emergency transport service as he is a citizen of Orange County and is a qualified North Carolina paramedic. As a citizen of [Orange County] he is a potential patient of [Orange County] EMS." (1st

Am. Compl. (Doc. 4) ¶ 126 (emphasis added).)[13]  Thus, the harm of

which Mr. Clark complains rests on assumptions that he will be

the victim of a medical emergency in Orange County at some point

in the future; that when that emergency takes place, Orange

County will employ inadequate rescue and emergency transport

resources; and that Mr. Clark will suffer some cognizable injury

as a result.  Especially given that Plaintiffs have failed to

allege factual matter showing that these circumstances are likely

to come to pass, the alleged harm to Mr. Clark is too conjectural

and hypothetical to support a conclusion that Mr. Clark has

satisfied the injury-in-fact element of standing.  See City of

Los Angeles v. Lyons, 461 U.S. 95, 105-08 (1983) (holding that

the plaintiff lacked standing to seek an injunction against

police officers' unprovoked use of "chokeholds" because it was

too speculative to assert that the plaintiff would again be

---

[13] In responding to Defendants' Rule 12(b)(1) motion,
Plaintiffs have attempted to clarify this position, stating:
"Although it is conjecture that Gary Clark would ever need the
services of Orange County EMS, he knows and fears now that he
could not depend on their services in that event and that is the
'injury in fact.'"  (Resp. Opp'n Defs.' Mot. Dismiss Lack Subject
Matter Jurisdiction (Doc. 27) 5.)  Plaintiffs have not shown that
Mr. Clark has any reason to be especially fearful as to the
dependability of Orange County's emergency medical services, and
this court finds that any person who might potentially need
emergency medical assistance in Orange County could harbor the
very same fear.  Thus, to the extent that this subjective fear
constitutes Mr. Clark's asserted injury in fact, this court
concludes that Mr. Clark has failed to "differentiate himself
from the mass of people who may find the conduct of which he
complains to be objectionable only in an abstract sense."  See
Friends of the Earth, Inc., 204 F.3d at 156.

stopped by police officers and that the officers would again apply a chokehold without provocation).

There is likewise no indication that any member of OCRS has suffered injury that is actual or imminent. Plaintiffs have stated that OCRS's injury "is the inability to rely on the Orange County EMS to arrive within 10 minutes in the event of a medical emergency." (Resp. Opp'n Defs.' Mot. Dismiss Lack Subject Matter Jurisdiction (Doc. 27) 4.) Any alleged harm to OCRS's members thus appears to depend on the same speculation as the purported injury to Mr. Clark. This court concludes that Plaintiffs have failed to demonstrate injury in fact to any member of OCRS and therefore concludes further that OCRS cannot assert associational standing on behalf of its members. See Warth, 422 U.S. at 511 (stating that, in order to "have standing solely as the representative of its members," an association "must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit" (citing Sierra Club v. Morton, 405 U.S. 727, 734-41 (1972))).[14]

_____

[14] In addition to asserting that members of OCRS have standing based on injuries arising from slow emergency response times in Orange County, Plaintiffs have also contended that OCRS is a proper party to bring this class action claim because "the prohibition of [OCRS] to provide its rescue and emergency transport services is the reason for the breach." (1st Am. Compl. (Doc. 4) ¶ 125.) This assertion is somewhat incongruous

28

Because Plaintiffs have failed to sufficiently demonstrate that Mr. Clark or any member of OCRS suffered injury in fact, this court does not have subject matter jurisdiction to entertain Plaintiffs' class action claim, and that claim must be dismissed. See Lyons, 461 U.S. at 101, 110.[15] This court will dismiss Plaintiffs' class action claim pursuant to Defendants' motion under Federal Rule of Civil Procedure 12(b)(1) and therefore need not address Defendants' Rule 12(b)(6) motion as it pertains to the class action claim.

## IV. CONCLUSION

With respect to the federal-law portions of Plaintiffs' causes of action (1), (2), and (5), this court concludes that Plaintiffs have failed to state a claim upon which relief can be

---

with the theory underlying Plaintiffs' class action claim, which is that Defendants have unconstitutionally deprived Plaintiffs of a due process life interest in adequate emergency services. Although OCRS's members provide emergency medical and rescue services, Plaintiffs have not shown that this renders them any more likely to need emergency services themselves. Cf. Morton, 405 U.S. at 739 (stating that "a mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to" establish injury in fact for purposes of organizational standing). For purposes of OCRS's federal-law claims, any harm to OCRS that may arise specifically from its role as a provider of emergency medical services has already been addressed in the context of causes of action (1), (2), and (5).

[15] Because Plaintiffs lack standing to bring their class action claim, this court will also deny Plaintiffs' Motion for Class Certification on the Seventh Cause of Action (Doc. 14). See Smith v. Pennington, 352 F.3d 884, 888, 896 (4th Cir. 2003) (affirming district court's denial of class certification due to proposed class representative's lack of standing).

granted.  As to cause of action (7), this court concludes that Plaintiffs have failed to establish standing to invoke this court's jurisdiction, resulting in dismissal of that cause of action and denial of class certification.  Because this court will dismiss, with prejudice, all claims over which it has original jurisdiction, this court declines to exercise supplemental jurisdiction over the state-law portions of causes of action (2), (3), (4), (5), and (6) and will dismiss those state-law claims without prejudice.  See 28 U.S.C. § 1367(c)(3) (2006); Yarborough, 406 F. Supp. 2d at 609; Gen. Textile Printing & Processing Corp., 908 F. Supp. at 1312.  Further, this court concludes that Plaintiffs' proposed Second Amended Complaint and their attempted joinder of Frances D. Brown as a party plaintiff would not save any of Plaintiffs' federal claims from dismissal.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss for Failure to State a Claim upon Which Relief May Be Granted (Doc. 19) be GRANTED as to the federal-law portions of Plaintiffs' causes of action (1), (2), and (5).  IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Plaintiffs' Class Action Claim for Lack of Subject Matter Jurisdiction (Doc. 21) be GRANTED and that Plaintiffs' Motion for Class Certification on the Seventh Cause of Action (Doc. 14) be DENIED.  The state-law portions of Plaintiffs' causes of action (2), (3), (4), (5), and (6) are DISMISSED WITHOUT PREJUDICE.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Amended Complaint (Doc. 30) be **DENIED** to the extent that it concerns the federal-law issues in this case. Plaintiffs' Motion to Add Party Joining an Additional Plaintiff (Doc. 31) is also **DENIED**.

A corresponding judgment will be entered contemporaneously with this order.

This the 17th day of March 2011.

William L. Osteen, Jr.
United States District Judge